**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **v.** | § | **CASE NUMBER 1:26-CR-2-MAC** |
| | § | |
| | § | |
| **JEFFREY TODD BLACKBURN** | § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE ON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Pending before the undersigned is a "Motion to Suppress" (Doc. #20) filed by Defendant, Jeffrey Todd Blackburn ("Blackburn").[1] The United States filed a response to Defendant's motion (Doc. #25), and the undersigned magistrate judge heard testimony and oral argument on August 13, 2026. The undersigned finds that the search and seizure in this case was lawful. Accordingly, the undersigned recommends denying Defendant's Motion to Suppress.

## I. RELEVANT FACTS

Defendant is charged in a three count First Superseding Indictment alleging: 1) Possession with Intent to Distribute 50 grams or more of Actual Methamphetamine; 2) Conspiracy to Possess with the Intent to Distribute 50 grams or more of Actual Methamphetamine; and 3) Possession of a Firearm by a Felon.

At the suppression hearing, Detective J. Deville with the Jefferson County Sheriff's Office testified that he received information from Officer Berdine that a confidential informant reported a blue Dodge pickup with an Oklahoma license plate driven by Defendant was in Beaumont to

[1] This motion is referred to the undersigned United States magistrate judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law. *United States v. Raddatz*, 447 U.S. 667, 681-84 (1980); *see also* 28 U.S.C. § 636(b)(1)(B) and E.D. TEX. LOCAL R. CR-59(a).

carry out narcotic and firearms activity near Edson Drive. Det. Deville testified that this informant was reliable and their information has led to multiple arrests. Acting on this information, Det. Deville, while working undercover on July 19, 2025, observed Defendant driving the vehicle described near Edson Drive. He testified that Defendant committed multiple traffic violations, including failure to stop and failure to use a turn signal. He radioed this information to uniformed Detective Scott Weaver to perform a traffic stop of Defendant.

Det. Weaver, a K-9 handler with the Jefferson County Sheriff's Office since 2023, also testified at the suppression hearing. He stated that he followed Defendant, turned on his flashing lights, and stopped him. Det. Weaver testified that he had narcotics dog, Youp, in the vehicle with him at the time of the stop. Youp is K-9 certified with the National Narcotic Detector Dog Association, Inc. ("NNDDA"), with his latest certification completed on August 7, 2024, which includes odor detection for marijuana, cocaine, heroin, methamphetamine, and MDMA. Det. Weaver noted that he has 32 hours of training with Youp, and Youp has 700 hours of training. He testified that Youp does not have a consistent alert, but he will change his behavior, such as closing his mouth and breathing in through his nose while becoming quiet and rigid. He may also bark, sit, or scratch. Youp may also become distracted and require re-direction by pulling on his leash or giving him a verbal command.

After stopping Defendant, Det. Weaver told Defendant about the observed traffic violations and that he would receive a warning for them after running his checks with dispatch. Defendant exited the vehicle, along with his passenger, while waiting to hear back from dispatch. Det. Berdine was also present at the stop in a separate patrol car. A little over nine minutes into the stop, while still waiting for dispatch, Det. Weaver asked Defendant if he could search the vehicle and Defendant refused consent. Det. Weaver then announced that he would be performing an

exterior dog sniff of the vehicle and retrieved Youp. About three minutes later, Youp jumped up on the driver's side of the vehicle towards the backseat and scratched the side of the vehicle. Det. Weaver testified that this was a positive odor response and notified dispatch of same.

The Government argues that Youp's positive response provided probable cause to search Defendant's vehicle, which Det. Weaver proceeded to carry out. His search of the vehicle at the scene of the stop revealed narcotics (crack cocaine, marijuana, and methamphetamine) and currency. Defendant was then arrested. After being handcuffed, he began to slam his head into a tree and vehicle. He also stated that the officers should "kill me." Due to his self-harming behavior, the officers removed him from the scene and decided to continue the search of the vehicle at a different location. Once at the new secure location, the toolbox in the bed of vehicle was searched using a key obtained from Defendant's key ring that was still in the ignition. At least eleven firearms were found in the toolbox.

In addition to the above testimony, the Government produced a copy of the dash camera and body camera footage showing the above events. (Govt. Ex. 2, 3.) Defendant also produced a video taken by his cellular phone during the stop. (Deft. Ex. 1.)

## II. STATEMENT OF ISSUES

Defendant asks the court to suppress all of the evidence seized as a result of a violation of his rights under the Fourth Amendment of the United States Constitution. (Doc. #20.) Defendant argues the search and seizure was illegal because it was not based upon probable cause. Specifically, he asserts that there was no additional reasonable suspicion gathered after the traffic stop and the K-9 search of the exterior of his vehicle did not provide the necessary probable cause because the dog was "cued" by the officer to alert. In addition, Defendant argues that a warrant

should have been obtained to search the toolbox of the vehicle after removing the vehicle from the scene of the traffic stop to a different location because no exigency existed.

In response, the Government contends that the dog sniff was a free air sniff in a public area, so it was not considered a search, nor was there a delay in performing the dog sniff. (Doc. #25.) Further, there was reasonable suspicion to perform the dog sniff based upon the information from the confidential informant. Youp alerted by jumping up with his front paws on the side of the vehicle and scratched the vehicle, and this alert indicated the presence of narcotics in Defendant's vehicle giving probable cause to search the interior of the vehicle. In addition, the Government claims the search and seizure of the toolbox was justified because probable cause to search a vehicle includes all contents of the vehicle and moving the vehicle did not erode probable cause.

## III. RELEVANT LAW AND DISCUSSION

The Fourth Amendment protects individuals from unreasonable searches and seizures. Traffic stops are considered seizures within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Because traffic stops are considered more similar to investigative detentions than formal arrests, the legality of traffic stops for Fourth Amendment purposes is analyzed under the standard articulated in *Terry v. Ohio,* 392 U.S. 1 (1968). *Terry* requires that courts apply a two-step "reasonable suspicion"[1] inquiry to 1) determine whether the officer's action was justified at its inception, and 2) determine whether the search or seizure was reasonably related in scope to the circumstances that justified the stop in the first place. *United States v. Zamora*, 661 F.3d 200, 204 (5th Cir. 2011). The initial inquiry is directed at whether there was reasonable suspicion of illegal activity, such as a traffic violation. *Lopez-Moreno*, 420

---

[1] The reasonable suspicion standard requires "considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Prado Navarette v. California*, 572 U.S. 393, 397 (2014). The officer's reasonable-suspicion determination is "based on the totality of the circumstances and the ... knowledge and experience of the officer." *United States v. Estrada*, 459 F.3d 627, 631–32 (5th Cir. 2006).

F.3d 420, 430 (5th Cir. 2005). Here, the parties do not dispute Defendant's traffic violations. Thus, the only remaining issue is the search of the vehicle. Where there is no warrant, the government bears the burden of establishing by a preponderance of the evidence that the challenged search and/or seizure was valid. *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005).

"The judge's role at a suppression hearing is to determine the credibility of witnesses and find the facts." *United States v. Jones*, 187 F. Supp. 3d 714, 723 (M.D. La. 2016). "At a suppression hearing, it is 'well within the trial court's discretion' to weigh the evidence and make credibility determinations regarding conflicting testimony." *Id.*; *see Norman v. Stephens*, No. CIV.A. H-13-0624, 2013 WL 6498979, at *21 (S.D. Tex. Dec. 11, 2013).

**A. Did the Dog Sniff Prolong the Stop?**

A free-air sniff by a narcotics detection dog is considered so minimally invasive that it does not constitute a "search" or a "seizure" for Fourth Amendment purposes. *United States v. Place*, 462 U.S. 696, 707 (1983); *see also United States v. Keller*, 123 F.4th 264, 268–69 (5th Cir. 2024) ("the instinctive actions of a trained canine—including placing his paws on a vehicle's exterior—constitute incidental contact, not an unconstitutional Fourth Amendment search"). "A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." *Illinois v. Caballes*, 543 U.S. 405, 409 (2005). The critical question is whether the dog sniff prolongs the traffic stop. *See Rodriguez v. United States*, 575 U.S. 348, 357 (2015).

In *Rodriguez,* the Supreme Court held that an officer may not extend an otherwise completed traffic stop to conduct a dog sniff without additional reasonable suspicion. *Id.* There, the officer lawfully stopped a vehicle with two occupants for driving on the shoulder then ran a

records check on the driver, issued a warning ticket, and returned his documents. *Id.* at 351. After issuing the warning ticket, the officer held the defendant for an additional seven or eight minutes until a canine unit arrived, and a search ultimately uncovered methamphetamine in the vehicle. *Id.* The Court ultimately remanded the case for the lower court to consider whether additional reasonable suspicion existed to prolong the traffic stop to allow the canine sniff. *Id.* at 353.

During a lawful traffic stop, an officer can check driver's licenses, registration, and run computer checks for warrants. *Id.* at 355. "The officer may also ask about the purpose and itinerary of the occupants' trip." *United States v. Carroll*, No. 4:24-CR-00038-SDJ-BD, 2026 WL 1915588, at *4 (E.D. Tex. July 2, 2026). He may even ask questions of the vehicle's occupants that are unrelated to the violation, provided that doing so does not prolong the stop absent independent reasonable suspicion. *Rodriguez,* 575 U.S. at 355. However, an officer's authority ends when the traffic-related tasks "are—or reasonably should have been—completed." *Id.* at 354.

Here, Det. Weaver pulled Defendant over for two traffic violations—failure to stop and failure to use a turn signal. He asked routine questions during the stop, including why Defendant was in town to which he stated they were working on homes. Officer Weaver called dispatch to check Defendant, his passenger, and the vehicle. Dispatch had not completed those checks yet when Det. Weaver conducted the free air dog sniff approximately ten minutes into the stop. Det. Weaver's dog, Youp, was already in the vehicle during the traffic stop. There was no delay for Youp's arrival. Consequently, the undersigned finds that the stop was not prolonged by the dog sniff. *See United States v. Shen*, 749 F. App'x 256, 260 (5th Cir. 2018) ("We believe that ten minutes to issue a traffic warning and ask questions constitutes a reasonable time.") (citing *United States v. Villafranco-Elizondo*, 897 F.3d 635, 644 (5th Cir. 2018) (finding traffic stop reasonable

where officer did not run a check on driver's license and registration until 11 minutes into the stop)). Here, the stop had not yet even been completed, as dispatch had not finished the checks, and Det. Weaver had not issued the warning ticket. Instead, the dog sniff occurred contemporaneously with tasks that independently justified Defendant's continued detention. Given that the stop had not been completed, a need for additional reasonable suspicion to extend the stop was unnecessary. *See United States v. Speaks*, No. 2:25-CR-017-Z-BR-(1), 2025 WL 2831388, at *7 (N.D. Tex. Oct. 6, 2025) ("The [c]ourt already determined the stop was not extended. But even if it were, the [o]fficers likely had reasonable suspicion from the outset, which merely grew as the stop progressed.").

Moreover, even if the court were to require additional reasonable suspicion beyond the traffic violations justifying the stop, the informant tip provided such proof. A confidential informant tipped off officers that Defendant had narcotics and firearms in his blue truck with Oklahoma plates traveling near Edson Drive. The Fifth Circuit instructs to look at the totality of circumstances that existed both before the stop and during the stop in establishing whether there is reasonable suspicion of criminal activity aside from the traffic violations to initiate the stop. *See United States v. Spears*, 636 F. App'x 893, 904 (5th Cir. 2016). In *Berry*, the court looked at this very issue citing the "collective knowledge doctrine"[2] and found that information received by the officer from the DEA regarding suspected narcotics trafficking *prior to the stop* properly contributed to the reasonable suspicion determination to extend the stop beyond the investigation of the traffic violation. *United States v. Berry*, 664 F. App'x 413, 419–20 (5th Cir. 2016).

[2] "Under the collective knowledge doctrine, an officer initiating the stop or conducting the search need not have personal knowledge of the evidence that gave rise to the reasonable suspicion or probable cause, so long as he is acting at the request of those who have the necessary information." *United States v. Zuniga*, 860 F.3d 276, 283 (5th Cir. 2017).

Once it is determined that the dog sniff did not prolong the stop, the question becomes whether that sniff provided probable cause to justify a search of the vehicle.

**B. Did the Dog Sniff Provide Probable Cause to Search the Vehicle?**

A warrantless search of an automobile is valid under the Fourth Amendment when a police officer has probable cause. *Almeida-Sanchez v. United States*, 413 U.S. 266, 269 (1973). A narcotics detection dog's alert provides probable cause when "all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Florida v. Harris*, 568 U.S. 237, 248 (2013). "There is no Fifth Circuit law demanding that a drug dog come to a full and final alert before probable cause exists." *Shen,* 749 F. App'x at 261. "[E]ach dog alerts in a different way, and the dog's behavior must be interpreted by his handler." *United States v. Masterson*, 450 F. App'x 348, 349 (5th Cir. 2011). "The alert comes from behaviors specific to the canine, which indicate to its handler that the dog is responding to odors from an illicit substance." *United States v. Speaks*, No. 2:25-CR-017-Z-BR-(1), 2025 WL 2831388, at *10 (N.D. Tex. Oct. 6, 2025).

In *Shen*, the Fifth Circuit upheld as probable cause a "passive" alert dog sniff where the dog was trained to alert by sitting but instead the dog alerted by standing and staring at the area of the narcotics odor being detected. *Shen*, 749 F. App'x at 261-262. The court held several factors supported the finding of probable cause: the length of time the dog had worked with his handler; the dog's certification and training; and testimony regarding the dog's history of false positives. *Id.*

In *United States v. Conchas-Mancilla*, 173 F.4th 200 (5th Cir. 2026), the Fifth Circuit affirmed the denial of defendant's motion to suppress cocaine discovered in his vehicle at an immigration checkpoint. A certified Border Patrol drug dog, Badi, twice exhibited behavioral

changes that his handler recognized as an "alert" to the vehicle's rear bumper, where agents subsequently found cocaine. *Conchas-Mancilla*, 173 F.4th at 201. The defendant argued that the warrantless search lacked probable cause because Badi merely alerted to the odor of drugs but never gave a trained "indication," such as sitting, scratching, or pointing. *Id.* The Fifth Circuit rejected that distinction, explaining that probable cause is determined under the totality of the circumstances and that a reliable drug dog's "alert" can establish probable cause even without a full "indication." *Id.* The court emphasized that Badi and his handler were certified by Customs and Border Protection, had never required remedial training, Badi had discovered drugs thousands of times, and his behavior in this instance constituted a strong, definitive alert precisely where the cocaine was hidden. *Id.* Accordingly, the court found that the district court did not clearly err in finding Badi reliable and determining that his alerts gave agents probable cause to search the vehicle. *Id.*

Moreover, "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Harris*, 568 U.S. at 247. The Supreme Court has held that "if a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can *presume* (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." *Id.* at 246-247 (emphasis added); *see also United States v. Carroll*, No. 4:24-CR-00038-SDJ-BD, 2026 WL 1915588 (E.D. Tex. July 2, 2026) (finding presumption that dog's alert was reliable based on certification and training was not rebutted by defendant). The Court in *Harris* noted examples that a defendant may offer to rebut this presumption, such as: cross-examining the testifying officer or by introducing his own fact or expert witnesses; contesting the adequacy of a certification or training program, perhaps asserting that its standards are too lax or its methods faulty; introduce evidence of the dog's (or handler's)

history in the field; show that other circumstances surrounding a particular alert may undermine probable cause, such as if the officer cued the dog (consciously or not); or if the team was working under unfamiliar conditions. *Harris*, 568 U.S. at 247.

As shown in the above cases, courts continue to look at the totality of the circumstances instead of a rigid, bright-line test when evaluating drug dog behavior to support probable cause. Here, evidence was presented that: Det. Weaver has been a handler since 2023; he did 32 hours of training with Youp, including single blind and double blind field training; Youp has 700 hours of training; Youp was NNDDA certified on September 8, 2023, and then again on August 7, 2024 in Baytown, Texas for marijuana, cocaine, heroin, methamphetamine, and MDMA; and Youp usually alerts by breathing in through his nose, becoming rigid, and sometimes barks, sits, or exhibits other changes in behavior. The dash cam video shows Youp moving around the vehicle sniffing then becoming distracted at one point at the front of the vehicle and reined in, then when he reaches the driver's side of the vehicle, he jumps up and scratches the vehicle near the rear cab door on the driver's side. Det. Weaver then alerts dispatch that Youp had a positive odor response.

Based upon this evidence, the court finds that a presumption exists that Youp's alert was reliable and provided probable cause to search the vehicle. To rebut this presumption, Defendant argues that the officer "cued" Youp to jump on the vehicle to alert for narcotics by pulling back on his leash. Defendant also asserts that the drugs were not found in the location where Youp alerted. The testimony and the video show that a pillowcase containing crack cocaine was located in the back seat towards the middle. Methamphetamine and marijuana were also found in the car on the front passenger side near the center console and under the seat. Whether a dog alerts is a question of fact. *United States v. Smith*, 355 F. Supp. 3d 544, 552 (N.D. Miss. 2018).

In *Rainey,* the court found that there must be objective evidence of improper cues or coaching by the officer. *United States v. Rainey*, No. 2:24-CR-083-Z-BR-(L), 2025 WL 593380, at *10 (N.D. Tex. Feb. 24, 2025), *aff'd*, No. 25-11037, 2026 WL 2364775 (5th Cir. Aug. 14, 2026). In that case, the evidence showed that the K-9 was certified, had conducted multiple free-air sniffs, and had a reliability rating of at least 67% in the field. *Id.* In light of these statistics and finding no objective evidence of cues in the video, the court held that the K-9 reliably alerted to the presence of narcotics in the defendant's vehicle giving probable cause to search it. *Id.* at *11.

In *Carroll*, the court also rejected a defendant's contention that the handler improperly cued the certified drug detection dog by holding the leash high and moving ahead of him then cuing him to jump through the truck's open window. 2026 WL 1915588, at *10. The court noted the officer's testimony that it was impossible for a high leash hold to trigger the dog to jump, he was not trained to jump into vehicles, and he intentionally held the leash high to avoid injury or a miscue. *Id.* Considering these facts, the court found no evidence that the handler prompted the dog and noted that an unprompted entry into a vehicle does not invalidate the sniff. *Id.*

In *Lindsay*, the defendant introduced evidence through his own expert on law enforcement dog training. *United States v. Lindsay*, No. A-13-CR-032-LY, 2013 WL 3864675, at *7 (W.D. Tex. July 24, 2013). The expert testified that Buddy, the K-9 at issue, was not properly trained, he was looking up rather than focusing on the vehicle, he was reacting to cues given by the officer, and that he jumped up on the passenger side of the exterior of the vehicle where the defendant's dog was because "dogs want to investigate other dogs." *Id.* The court found that Buddy's training (although not four hours every week) was sufficient under existing training standards, his certification with NNDDA is with a top three organization, and his previous success in locating narcotics with 100% accuracy in a controlled environment were sufficient indicia of his reliability.

The undersigned finds Defendant's rebuttal evidence in this case insufficient considering the totality of the circumstances. As discussed above, Youp's training and certifications deem him reliable. There were drugs found in the backseat near where Youp alerted, and after carefully reviewing the video evidence, it does not appear that Det. Weaver cued Youp to jump on the vehicle. Det. Weaver also testified that he did not give cues to Youp and there was no evidence presented to question his veracity.

**B. Search of the Toolbox**

During oral argument, Defendant also alleged that a warrant should have been obtained to search the toolbox of the vehicle after removing the vehicle from the scene of the traffic stop to a different location because an exigency no longer existed. However, "if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Garza*, 833 F. App'x 601, 602 (5th Cir. 2021) (quoting *California v. Acevedo*, 500 U.S. 565, 570 (1991)). Moreover, "[i]f probable cause justified a warrantless search on the roadside, it likewise justified one at the station after the car was impounded." *United States v. McSween*, 53 F.3d 684, 689 (5th Cir. 1995).

In *McSween*, the defendant similarly argued that officers lacked probable cause to arrest him, impound the vehicle, and conduct a further search. *Id.* During the traffic stop, the defendant gave general consent to search his rental vehicle without any stated limitations. *Id.* at 688. The officers then found an object wrapped in plastic in a hole under the hood and suspected that it was a bale of marijuana. *Id.* at 689. The officers also smelled marijuana in the vehicle and knew of his prior narcotic arrests so they arrested him and impounded his vehicle before completing their search. *Id.* The court found probable cause justified the initial search and arrest on the roadside,

so the second search at the sheriff's office revealing cocaine was also justified without first obtaining a warrant. *Id.*

Defendant also argues that entry into the toolbox was a trespass citing to *Jardines*. *See Florida v. Jardines*, 569 U.S. 1 (2013). In that case, the Supreme Court considered a dog sniff to the curtilage of a home without a warrant. *Id.* Law enforcement received a tip that the defendant was growing marijuana inside his home, so they went to the residence with a trained drug detection dog. *Id.* at 3-4. The handler brought the dog toward the front porch and the dog eventually sniffed the base of the front door and alerted to narcotics odor. *Id.* Officers used that positive alert to obtain a search warrant and search the home, which uncovered marijuana plants. *Id.* The defendant moved to suppress, arguing that the warrant was based on information obtained through an unconstitutional search. *Id.* at 4-5. The Supreme Court held that bringing the drug sniffing dog onto the defendant's front porch to investigate the contents of his home constituted a "search" under the Fourth Amendment. *Id.* at 11-12.

The undersigned finds the *Jardines* case distinguishable from the instant case. The critical issue in *Jardines* was where the dog sniff occurred—curtilage of the home—which has long enjoyed core Fourth Amendment protection. Officers physically intruded on the home's protected curtilage to obtain information about the contents in the home. Here, the dog sniff occurred on a public street and provided probable cause to search the entire vehicle and its contents. *Jardines* did not overrule *Illinois v. Caballes*, 543 U.S. 405, 410 (2005), holding that a dog sniff conducted during a lawful traffic stop does not violate the Fourth Amendment. Finding the dog sniff in this case lawful, it therefore provided probable cause to search the entire vehicle, including the toolbox.

## IV. RECOMMENDATION

The undersigned finds the Government has carried its burden by showing, by a preponderance of the evidence, that it did not violate Defendant's Fourth Amendment rights. The court finds that the dog sniff did not extend the traffic stop. Further, even if it had, officers had reasonable suspicion to extend the stop. In addition, there was probable cause to search Defendant's vehicle based upon the K-9 unit alert indicating the presence of narcotics in Defendant's vehicle, and therefore the following search and seizure was also lawful. Consequently, it is recommended that the district court deny the Defendant's Motion to Suppress. (Doc. #20.)

## V. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation. Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) **be served and filed by September 18, 2026,**[3] and (4) be no more than eight (8) pages in length. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(2); E.D. TEX. LOCAL R. CR-59(c). A party who objects to this Report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within the time allotted, bars that party from: (1) entitlement to *de novo* review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2)

[3] The court has shortened the objection deadline to account for the plea deadline of September 21, 2026.

appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED this the 14th day of September, 2026.**

Christine L Stetson
UNITED STATES MAGISTRATE JUDGE