**UNITED STATES DISTRICT COURT** **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| *versus* | § | **CASE NO. 1:26-CR-2-MAC** |
| | § | |
| | § | |
| **JEFFREY TODD BLACKBURN** | § | |

**ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Pending before the court is a Motion to Suppress filed by Defendant, Jeffrey Todd Blackburn (#20). The United States filed a response to the Defendant's motion (#25). This motion was referred to United States Magistrate Judge Christine L. Stetson for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law. *United States v. Raddatz*, 447 U.S. 667, 681-84 (1980); *see also* 28 U.S.C. § 636(b)(1)(B) and E.D. TEX. LOCAL R. CR-59(a). Judge Stetson heard testimony and oral argument on August 13, 2026. Judge Stetson concluded that the search and seizure was lawful and recommended denying Defendant's motion. (#39.)

Defendant objected to Judge Stetson's findings arguing that the traffic stop was prolonged by the officer's "off-mission investigation," the dog sniff did not supply probable cause, and the later search of the toolbox was unlawful. (#47). The court reviews these objections *de novo*.

**PROLONGED STOP**

Defendant asserts the officer diverted from his mission of pursuing a traffic violation to instead investigate narcotics and this interval prolonged the stop. Defendant also asserts that the informant tip did not supply additional reasonable suspicion to extend the stop because it was not

shown to be reliable. The court finds these objections meritless. As explained by Judge Stetson, the evidence shows that the officers diligently pursued investigation of Defendant's traffic violations as well as a known informant's tip regarding possible narcotics trafficking. The entirety of the stop including the dog sniff was less than 15 minutes. The dog sniff was conducted around ten minutes into the stop prior to completion of dispatch's background checks. The court finds the stop was not prolonged.

The Fifth Circuit recently examined this issue in a very similar case. In *United States v. Brown*, officers observed a driver (Brown) leaving a house being surveilled for a narcotics operation and they called in another undercover officer to follow Brown to observe for traffic violations. *United States v. Brown*, No. 25-50728, 2026 WL 2393140, at *1 (5th Cir. Aug. 17, 2026). After observation of Brown failing to stop before a stop line, a canine officer with a canine in his marked vehicle was radioed to initiate a stop of Brown. *Id.* The canine officer stopped Brown and asked for his insurance information, which took a few minutes to produce after he called his wife. *Id.* After Brown produced his insurance and refused consent to search, the canine officer immediately announced that he would conduct a dog sniff and the dog alerted. *Id.* The alert occurred approximately 14 minutes into the stop and revealed a firearm. *Id.* The Fifth Circuit held that "the dog sniff did not 'measurably extend the duration of the stop' because Officer Asmus's dog was already on the scene and alerted within one minute. Thus, the stop lasted no longer than necessary to effectuate its purpose." *Id.* at *2. The court also found that the dog sniff was independently justified because it was supported by reasonable suspicion of additional criminal activity due to his colleagues' investigation of narcotics trafficking at a house Brown was seen leaving. *Id.*

With regard to informant tips, "[r]easonable suspicion can be formed by a confidential informant's tip so long as the information is marked by 'indicia of reliability.'" *United States v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013). Reliability is judged by "the specificity of the information contained in the tip or report, the extent to which the information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity, or has instead gone stale." *United States v. Martinez*, 486 F.3d 855, 861 (5th Cir. 2007). Here, the Government stated that:

> On [June] 19, 2025, a Detective with the Jefferson County Sheriff's Office Narcotics Division received information from a Confidential Informant (CI) that Jeffrey Todd Blackburn (Blackburn) would be in the area of Edson Drive, in Beaumont, driving a blue Dodge pickup truck displaying a specific Oklahoma license plate. The CI informed the detectives that Blackburn distributes narcotics in the Beaumont area when he travels from Oklahoma. Detectives were able to locate a blue Dodge pickup truck displaying the exact Oklahoma plate that the CI mentioned on Fieldwood Drive, which intersects with Edson Drive.

(#25, p. 3.) Further, at the suppression hearing, the officer testified that this CI has worked with law enforcement for several years giving them reliable information and his information has led to multiple arrests. Defendant did not cross-examine the officer regarding the CI's background or reliability at the hearing, nor did he raise this issue in his briefing. Following the CI's tip, the officers located the truck in the area it was predicted to be on that same date and confirmed the make, model, color, and license plate of the truck as relayed to them by the CI. The court finds this tip was sufficiently reliable. This objection is overruled.

**DOG SNIFF**

Next, Defendant argues that he rebutted the presumption of reliability as to the dog's alert supplying probable cause. He asserts that the dog showed (1) no consistent, trained "final response", (2) he was cued, and (3) the lack of field-error data shows unreliability.

As noted by Judge Stetson, "[t]he judge's role at a suppression hearing is to determine the credibility of witnesses and find the facts." *United States v. Jones*, 187 F. Supp. 3d 714, 723 (M.D. La. 2016). Whether a dog alerts is a question of fact. *United States v. Smith*, 355 F. Supp. 3d 544, 552 (N.D. Miss. 2018). Courts look at the totality of the circumstances in deciphering whether a dog's alert provides probable cause. *Florida v. Harris*, 568 U.S. 237, 248 (2013). "There is no Fifth Circuit law demanding that a drug dog come to a full and final alert before probable cause exists." *See United States v. Shen*, 749 F. App'x 256, 261 (5th Cir. 2018). "[E]ach dog alerts in a different way, and the dog's behavior must be interpreted by his handler." *United States v. Masterson*, 450 F. App'x 348, 349 (5th Cir. 2011).

Here, the record reveals over 700 hours of extensive training by the dog, Youp, and certification with the National Narcotic Detector Dog Association, Inc. The K-9 officer, Det. Weaver, testified that he and Youp's training included single blind (dog is unaware of drugs to be detected) and double-blind field tests (both officer and dog are unaware of drugs to be detected). He also testified that Youp never required remedial training and was never in danger of failing his certification. Det. Weaver stated that in his training with Youp he has learned Youp's behavior when he is onto a narcotic odor—while normally a heavy mouth breather, when Youp detects narcotic odor, he gets quiet and breathes in air deeply. He also indicated that one of Youp's signals for a positive alert is scratching, which he did in this case after jumping on to the side of the truck. Det. Weaver testified that he cannot command Youp to give a positive response to narcotic odor, and he was never trained to do so. He further stated that he does not cue Youp.

As noted by Judge Stetson, the Court in *Harris* held that a presumption exists as to the reliability of a drug detection dog where evidence of his certification with a bona fide

organization is introduced. *Florida v. Harris*, 568 U.S. 237, 248 (2013). That was done here. *Harris* suggests that this presumption may be rebutted with evidence contesting the adequacy of the dog's certification, training program, and field history, or evidence of cueing. *Id.* at 247. Defendant did not cross-examine Det. Weaver regarding Youp's field history or offer evidence on this issue. Instead, Defendant points to the video evidence regarding his allegations of cueing. After reviewing the video exhibits in this case, the court finds no evidence of cueing by the officer. The court finds Defendant failed to rebut the presumption of reliability. This objection is overruled.

## TOOLBOX SEARCH

Finally, Defendant argues that there is a fact issue regarding where the key to the toolbox was found by the officers to open the toolbox. He also states that officers delayed the search of the toolbox for their own convenience. Defendant asserts in his motion to suppress that the key was obtained from the passenger, but he does not assert who owns the toolbox. At the hearing, Det. Weaver testified the key was found on the keychain attached to the key in the ignition of the truck. No evidence was introduced as to who owns the toolbox. The evidence points to the box being in possession of Defendant. It was located in the bed of the truck he was driving and the officer testified that the key was on his key ring.

In any event, "police officers with probable cause to search a car may inspect passengers' belongings found in the car that are capable of concealing the object of the search." *Wyoming v. Houghton*, 526 U.S. 295, 307 (1999). Further, "an individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband." *United States v. Ross*, 456 U.S. 798, 823 (1982). "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle

and its contents that may conceal the object of the search." *Id.* at 825. *Ross* explained that this rule applies equally to containers, specifically discussing locked trunks and containers within a trunk that may conceal suspected contraband. *Id.* at 801, 825. The scope depends on the object sought and where it could be found, rather than the nature of the container. *Id.*

With regard to the delay in searching the toolbox, the Government's response and the testimony at the hearing by the officer show that the delay was due to the erratic behavior of Defendant after his arrest. He was engaging in self-harm by banging his head against a tree and car and shouting loudly for someone to kill him. Given this display, officers decided to transport Defendant away from the scene and continue the search at a secure location. No matter the delay, the Supreme Court has held that:

> There is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure. *Texas v. White*, 423 U.S. 67, 68, 96 S.Ct. 304, 305, 46 L.Ed.2d 209 (1975) (per curiam); *Chambers v. Maroney*, 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). "[T]he justification to conduct such a warrantless search does not vanish once the car has been immobilized." *Michigan v. Thomas*, 458 U.S. 259, 261, 102 S.Ct. 3079, 3081, 73 L.Ed.2d 750 (1982) (per curiam). A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search. *Id.*, at 261–262, 102 S.Ct., at 3081; *see also Florida v. Meyers*, 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984) (per curiam).

*United States v. Johns*, 469 U.S. 478, 484 (1985); *see also United States v. Harrison*, 918 F.2d 469, 473 (5th Cir. 1990) ("The search need not be done immediately and if begun at the scene can be continued later at another location."); *United States v. Jones*, 37 F.3d 633 (5th Cir. 1994) ("[E]xigence is to be determined as of the time of seizure of an automobile, not as of the time of its search, and the fact that sufficient time to obtain a warrant has passed between the seizure and the search does not invalidate either."). The court also finds this objection without merit.

**CONCLUSION**

The court conducted a *de novo* review of the evidence and the objections in relation to the parties' filings and the applicable law. *See* FED. R. CRIM. P. 59; 28 U.S.C. § 636(b)(1). After careful consideration, the court finds the objections have no merit and that Judge Stetson correctly concluded that the search and seizure was lawful.

Accordingly, the Defendant's objections are OVERRULED. Judge Stetson's findings, conclusions and analysis are correct, and her report is ADOPTED. It is further ORDERED that the Defendant's Motion to Suppress (#20) is DENIED.

SIGNED at Beaumont, Texas, this 6th day of October, 2026.

Marcia A. Crone

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE